Good morning. Good morning, Your Honors. May it please the Court. I'm Rachel Parkin, here on behalf of the appellant Jeffrey James Halvorson. We appreciate your time this morning. I would like to reserve a couple minutes for rebuttal and I'll pay close attention to the clock. Thank you. I'd like to start this morning by addressing the District Court's primary concern underpinning its order, which is a concern that Halvorson's interpretation of the Safeco policy and in particular the dwelling coverage or coverage A in that policy extends beyond or would expand coverage beyond what was intended by the policy and would extend that coverage to basically any building on the premises that was used for some sort of habitation. I think that this concern is easily addressed by reference to guardrails. There are certain guardrails that the policy itself puts in place to avoid this overexpansion. There is, as I'm sure Your Honors are aware, no circuit case law or controlling case law on point here, but the case law that we do have also offers some application of guardrails that would prevent such an expansion of coverage as well. So the first point would be the policy language itself. Interpretation rules in Montana require that we interpret the policy as a whole and the language at issue is the dwelling used principally as a private residence and that principally as a private residence language as Safeco, as the District Court acknowledged, modifies the term dwelling. But so I want to understand your argument. Your argument, it seems to me, if you're going to prevail, you have to convince us that these two structures were one dwelling, don't you? Yes, Your Honor. Because there's no way that this second structure was used principally as a as a private residence. And I would respectfully disagree with that, Your Honor. Private residence by the insured? Private residence by the insured. His only testimony was that the education took a nap there and he spent time during the day there. Does that turn it into your principle? Does that make it principally use it? There's lots of evidence. It's used as a community center for events. People come in, they do things. Um, it seems to me, I know it's summary judgment, but I just don't see that there's an issue of fact or whether about whether viewing this second thing separately, it's used principally as a private residence. So it seems to me you've got your case turns on whether or not we combine the two and see whether the combination of the two is principally. Your Honor, I would absolutely agree with that. Um, the argument certainly is and always has been that the dwelling or that the community center forms a part of a two structured dwelling. Um, there's no dispute that Halverson didn't spend the night there on a regular basis. But I would analogize that to the three bedroom house, perhaps as well. There's no evidence that Halverson spent the night in the office or the spare bedroom. Nobody did not coverage for it either. True. So if this were a barn and he went in there during the day to commune with the animals and occasionally took a nap while he was doing so, would it still be covered as a dwelling under your view? I would argue no. Your Honor, the principally as a private residence language would prevent that. Well, that's so that it seems to me it prevented for this one, too, unless you somehow put them together and say together they're used principally as a private. And I think that two things go to that. First is the McFarland case. And then second is, um, the state district court case in in the earlier prior matter regarding septic and sanitation laws. And both of those support an argument. In Idaho, though, McFarland, there wasn't a principal residence provision in the insurance policy. That's correct. Your Honor, there wasn't a principal residence provision. And both places were principally used as dwellings. The garage with the bedrooms above it and the and the main house, if you will. So they were both principally used as dwellings. They were both principally used as dwellings. And I would come back to the original argument that the community center was also principally used as a dwelling. So the testimony from the underlying case establishes that, um, Halverson used that there was not a kitchen. I'm sorry. Dining room that Halverson used on a regular basis to eat in. There was a television family room, a TV room where he watched movies. There was a piano and guitars and a music room where he had jam sessions. There's a fact question about whether we use principally as a dwelling or that it is a principal use principally as a dwelling as a matter of law. I think it's a legal question. There's no factual dispute as to how the building was used. There's no dispute that testimony was that it was used principally, he said, as a community center. The community center was for dwelling purposes. Halverson used it. He testified he used it for living purposes. He lived in it just as he lived in his three bedroom home, I believe was his exact testimony. And there's no dispute that his his guests also used it for residential purposes. Principal residents. That's the principal residents of the insured, right? Well, I don't I don't think so, Your Honor. It has recovered as insured under the principal point. So if we look at, um, the case law, it suggests that the principal used principally as a private residence would mean that its primary use was as a private residence. And even the or its chief use was as a private residence. And even the guests that Halverson had in the community center used it for residential purposes. They were sleeping there. They were eating there. They were watching TV and recreating there. So just as in the de Phelps case, a bed and breakfast was used principally as a private residence. This, too, is used principally as a private residence by the guests. My recollection is he had multiple people in there sleeping. But my recollection is also from looking at the record, there was some action taken against him by I don't remember what Montana authority it was, whether it was a county or the state or the city because he was not properly, uh, using it. Am I right there? You are, Your Honor. And I can briefly address what that was. It was the county that brought a suit against Halverson and said that his use of the community center required an accommodations license. And the district court said no, he wasn't establishment and didn't need an accommodations license. And then the district court required that he, um, the COSA, the certificate of subdivision approval on that property limited him to one dwelling. And so what the district court said was you're using this is two dwellings. You need to remove the kitchen from the community center because the dwelling is defined by the Missoula County City Health Code as one or more structures that have facilities for, um, cooking and sleeping and I believe a bathroom. So you have to have one dwelling, but that dwelling can be comprised of both structures. So if you remove the kitchen from the community center, then you're not in violation of the COSA anymore. And he did that before the fire, did he not? He did, Your Honor. And the city came out after he did that as part of the district court's injunctive order. The city came out, inspected the removal and then certified to the district court that that had been completed. It was your argument that that at least is prima facie evidence that it was one dwelling because they said you can't have two dwellings. You have a kitchen in there. That's the second dwelling. You remove the kitchen. It's no longer a second dwelling. He did that and then he was certified. That's your argument, right? That is my argument. Can you read? I mean, we don't have the papers from the Montana district court case or zoning case, if you will. But I read it differently. I read it as saying now it's not a dwelling. And so we're not worried about having two dwellings on your property. You've now done. You've now done whatever Montana local law requires to undwelling in this place. It's now something else. And the code doesn't prohibit you from having something else there. I read it wrong. I think you do, Your Honor. And as you're reviewing the case later, I would just add that those papers and in particular that order is a part of the excerpts of record. Yeah, I can, Your Honor. Just we'll find it. I don't want to use your time. Sure. And I think that you are reading it differently than what the district court actually maybe. But that's how I read them. So tell me why I'm wrong and reading it. That's sure. And, Your Honor, it begins an excerpt of record 268. So what the district court actually said was in the injunctive relief that Halverson was permanently enjoined for maintaining more than one structure on the property that meets the definition of a dwelling under the Missoula City County Health Code. But in that injunctive relief, the district court also expressly permitted Halverson to keep one of the bedrooms in the community center. I understand. But it seems to me at least we may not be worrying about the definition of dwelling in the city code. But the district court did say you can't have some two structures that meet the definition of dwelling in the city code. It didn't say you can have two dwellings as long as you take out to take the kitchen out of it. Right. I think the distinction is that maybe the word independently should be put in there. The district court allowed two structures to comprise one dwelling on the property, but the district court prohibited two independent dwellings on the property. That's what I'm pushing back at you. Tell me where the state district court said I'm permitting two buildings to constitute one dwelling. Your Honor, the state district court referenced the code on page excerpts of record 284. The state district court acknowledged that a dwelling unit could be comprised of one or more structures or portions thereof. And in doing so, as part of this, Halverson actually had proposed connecting the two buildings so that it wouldn't be two separate dwellings. And the court said no, that would be a duplex and would because both structures even connected have the three independent, the bathroom, the bedroom, and the kitchen. And so in order to have just one dwelling on the property, you have to remove the kitchen from the community center. Yes. But that means the second one is not a dwelling. The second one standing alone is not a dwelling, but it doesn't preclude it from being a dwelling when connected or in comparison to the other. I just don't read the district, the state court. The other side argues that there's collateral estoppel because you can't, you agreed that the second one was not a dwelling anymore. And I don't think either of them makes a difference. Well, and I would actually disagree with that as well, Your Honor. I believe the district court required that Halverson submit a notice of compliance when the kitchen was removed from the community center. And in doing so, Halverson actually asserted to the district court what his understanding of that, you know, that order was, and he testified or he put in his notice of compliance that he understood and intended this to mean that he will not maintain more than one structure on the property that contains a bedroom, bathroom, and kitchen. So Halverson's understanding of the community center as a part of his one overall dwelling on the property was established as of 2016 and remained consistent throughout the duration up until the time the fire occurred and the fire was extinguished. Did you want to save the remaining time? I would, Your Honor. Thank you. You know, in all the time that I've been privileged to sit with this court, you might have had the fastest citation to the record I've ever seen. Thank you, Your Honor. May it please the court. I'm Brandon Shannon here on behalf of Safeco Insurance Company of America. Now, to argue that dwelling is ambiguous, Mr. Halverson interprets dwelling by itself in a vacuum with no context. And I would posit that most words, if you look at them by themselves without any context, could be found to be ambiguous. But the law is really clear on this subject of how we interpret insurance policies. It says we don't isolate a single word like the term dwelling, but we have to look at the policy as a whole and look at the provisions around it and interpret the policy that way. And here, when you do that, when you look at the context of coverage A and the meaning of the dwelling, it's clear that it's referring to a singular structure and that structure is the primary residential structure on the property, which is... Would we have to reject the McFarland holding by the Idaho Supreme Court? Judge, I don't think you would have to reject the McFarland. Well, that says there's two dwellings on the property, but we'll consider them as one. Yes. And Judge, I think that the McFarland is actually supportive of Safeco's position here, because what McFarland did is it said the ambiguity was that it could mean, you know, the term dwelling could mean the more singular house, which Dr. Halverson argues the community center is, or alternatively, it could mean the more singular house. And the McFarland court specifically looked for additional language in the policy at issue in that case and said, you know, there's no other language that would advance one interpretation of dwelling over another. But here, we do have that additional language that it must be used principally as a private residence. So if the two buildings were connected by an open breezeway, would that make a difference in your view? Judge, I think it would because the coverage A, if you look at the entire provision of coverage A, it says structures attached to the dwelling by something other than a fence or a walkway fall within coverage A. So I think that the attachment with a breezeway would very much change the interpretation. And I'd have to look at exactly how the policy phrases that. Would essentially allow the exact same facts to, in your view, go the other way? I believe so. Then let me ask you this. There was testimony in the record that he, this was originally a tannery, right? Correct, Your Honor. And he began to remodel it so that he could use it as part of his house. Basically  into this remodeled building, right? Correct, Judge. And I don't think the mere fact that it has some residential purposes, I think I would concede that point. The community center was certainly used for some residential purposes, but it wasn't the primary residential structure on the property. It seemed like he did more residential activities in the outbuilding versus non-residential activities. Would you agree with that characterization? I think that that is probably a close fact issue there. I will concede there's a lot of residential use of the outbuilding. His shop was also there. You know, he welded draft trailers there. He had business use of the property. The policy doesn't, isn't comparative. It doesn't say the building most principally used. It says a building principally used. So you could have two buildings principally used as a private residence, couldn't you? Judge, I would agree that you could have two buildings. That's exactly what we have had in McFarland. Yes, but the... And that's what I'm focusing on. The activities that he engaged in in the outbuilding seemed to me to be primarily residential-like activities versus non-residential uses. He ate in the main house. He ate in the outbuilding or the other building. He occasionally, he slept in the main house. He occasionally took naps in the other building. He hosted friends there. He did laundry in both locations. He played games. He had an art studio. He conducted jam sessions. That seems like residential uses. I would agree, Judge, that those are all residential uses of the property. But what I go back to is coverage A applies to the dwelling that's used principally as a private residence. And so that suggests that there's a singular structure that is the primary residential structure. The question is, I don't know if the dwelling is a singular structure or it could be two buildings used principally as a residence. And any ambiguity must be construed in favor of the insured. So what do we do with that? The reason that I, the response I have to the, you know, the two structures argument is that as we, as I've kind of discussed before, all of the policy language points to a singular dwelling. And I know you're saying there could be multiple structures, but if you look at coverage B, it again distinguishes the dwelling from all of the other structures. And structures is plural, whereas dwelling is singular. That's why I asked you at the beginning, you must be excited. Because McFarland has the same language. It says the dwelling. It has the same separation language. Yes. And the court there says there's two buildings, but they're both used principally as a dwelling. And therefore, I'm going to consider them together as the dwelling. Yes, Judge. And I think the... So you reject that holding, do you not? I do, Judge. And let me clarify that just so there's, so we're on the same page here. I reject that dwelling, the dwelling, means multiple structures. But I do... Except those connected as the... Except those within 20 feet of each other, or whatever the policy. Yes, except those that are connected by other structures, as the policy says. But the part of McFarland that I do agree with is that, you know, dwelling could by itself be ambiguous, and you have to look at other policy language. And McFarland said the ambiguity in the term dwelling is that it could mean anywhere where someone is inhabiting, or it could mean a singular house. And in McFarland, there was an additional language to decide which one of those interpretations prevailed. But here, we have the used principally as a private residence language that indicates that the dwelling is referring to a house, not just anywhere that has some kind of habitation. And that was also the exact holding in the Williamson case, is that, you know, the dwelling used principally as a private residence doesn't mean multiple structures where there's habitation. It means a singular house. Under this policy, let's assume that Mr. Halverson never lived on the property, but his guests did. And would that qualify as a dwelling? I don't think it would, Judge. I don't think it would be used principally as a private residence. Why not? Because I don't think that his guests' use is enough to qualify this as a private residence to me. And I think the definition of residence and private residence is where someone lives. It's not a hotel room. It's not a hostel that you stay at temporarily. And if you look at the, you know, I know Mr. Halverson characterizes these guests as friends, but if you look at his testimony from his examination under oath, he said these are folks that he meets on the Internet, and they typically stay a maximum of three days. Some are allowed to stay longer, but most stay three days. And they're folks that he gets to know because they stay with him for that short amount of time. But they're not residents of this property. They're not living there. Most of them come and go within three days. But he doesn't charge them anything. It's not a hotel. He doesn't charge them anything. He did testify, though, that he runs what he calls a free guest ranch. And he does expect that his guests who are staying there will perform some labor in exchange for being able to stay there. So it's akin to a hostel. Counsel, once you can see that the term dwelling is ambiguous, why isn't the question of whether the outbuilding was used primarily as a residence questions of fact for the jury to determine? Judge, and I think the distinction here is I'm saying in this particular policy, the language that the dwelling must be used principally as a private residence renders the term the dwelling not ambiguous in this policy. And then separate but certainly very related to that same analysis is the the factual question of, you know, was the outbuilding used principally as a private residence? So it's a it's a separate issue. The first one looks at whether I just understood what you said earlier, because I thought you said you agreed that the term dwelling has ambiguity, in which case it's construed in favor of being short. And the question becomes, well, was it used primarily as a residence? Judge, I'm because I want to be very clear about that. I do agree that if you look at dwelling just by itself, it could be ambiguous. But in this policy, when you look at the context that it has to be used principally as a private residence, that it that there's other there's coverage B that applies to all the other structures. I don't think in this case that dwelling is ambiguous. I think it applies to a singular. Is there language in the policy, I didn't see it, but is how many guests or what kind of guests or what what constitutes a private residence? Judge, there's not, there is a definition. Isn't that in itself created ambiguity? I don't think that the lack of a definition creates an ambiguity. You know, we can't define every word that we use in an insurance policy. I understand that, but in this case, where you have between three, four, five different people staying there, they're not paying anything, you you suggest that there's some undefined suggestion that they will do something around the property. I'm having a hard time trying to figure out myself how that can be unambiguous. Judge, I apologize, but specifically what term of the policy is it that you're suggesting is ambiguous with that? Well, the whole issue of what is a private residence, what constitutes a private residence, is there, you know, you say, well, it's unambiguous because it's the main place where the person resides or the people reside, right? But then Judge Nguyen pointed out that people are assumed for a moment that Mr. Halvorsen never went to the other place, but people reside there. Is it used principally as a private residence under those circumstances? Assuming that the guests are the same, that they're the folks that are only staying for three days, I would argue no. And I would like to point out before I move on from this, too, that Mr. Halvorsen's argument that the term, you know, used principally as a private residence is ambiguous, that's a new argument in his reply brief, and it wasn't addressed below with the district court. It wasn't in the briefing below. So the, you know, the ambiguity as far as the use principally as a private residence is arguably not in front of this court, but I'd also point out that in the Weingarten cases, the judge, that's the the marijuana grow operation apartment, the judge had no problem determining, you know, what the use principally as a private residence language meant. It meant, you know, it had to be principally used as someone's home. I'm still asking the same question. Is the someone Mr. Halvorsen, or is it anyone? I think under the policy it could be anyone. Okay, so that if his son lived in that building full-time, for example, then it would be used as a principally as a private residence. Yes, all other things equal. We'd be in the McFarland land, right? Yes, Judge. Okay, so where do you get full-time by the inhabitant out of this? More than three days. I'm not sure exactly where I would cut it off, but the the guests that are staying here have a really short-term temporary stay. They don't think that's enough to establish that that's their home. You know, I don't know exactly. It doesn't say domicile though. It says residence. I'm residing at a hotel right now, I think. I'm not domiciled there. Why isn't residence where people stay, just where they happen to reside from time to time? It's a it's a private residence. It's not merely a residence. I don't think a hotel would be a private residence. Well, but if he's not charging, because he occasionally charges, it's not a private residence. I do think that that goes to it not being a private residence. The guests were, as he testified, expected to perform labor around the guest ranch in exchange for being able to stay there. Can I ask you this? Again, I apologize. This is a hypothetical, but you've got a situation where, let's assume that Mr. Halverson, for whatever reason, decides that Montana isn't for him, okay? And, but he doesn't want to get rid of the property. So he essentially moves out of the, he's still got the policy, he moves out of that residence. He moves to a different state. Let's say he likes Colorado now. He moves to Colorado, right? But he still has all these people coming in and out staying at the the second building, okay? Under your view, neither building is any longer insured. The policy is illusory. Judge, I agree that neither building would be insured in that situation. He's paying for insurance, but neither building would be insured. I disagree that it's illusory, and the reasoning being is that he would need to to go to his agent and purchase, you know, a guest house policy or something like this. This particular homeowner's policy is... I'm just talking about this policy. Yes. This policy would be illusory. This policy is written for a home that's lived in, and it's underwritten with the understanding that someone is living there and maintaining it, underwriting for vacation homes that are not lived in all the time is certainly different than a homeowner's policy where you have a homeowner that's there and, you know, taking care of the property. I understand your argument. Thank you. Right. Thank you very much. Thank you. Thank you, Your Honors. I'd like to briefly go back to ambiguity. One of the things that Safeco has not addressed here is the fact that all of the cases and, granted, none of them are controlling, but all of the cases that have considered whether an ambiguity exists in relation to a dwelling have found that the answer is yes. The term itself is ambiguous. In addition to McFarland, Your Honor, Williamson found that the term was ambiguous. Would you like the And then also Crawford. Okay, and of those only, am I right in thinking only McFarland's reported? I'm sorry? Only McFarland is a reported case? Um, no, actually, I believe, Your Honor, Williamson is a reported case. The Carter case, I believe, is a reported case. I've said 3D. Slade is, I believe, a reported case as well. So all of those have found that the term dwelling is ambiguous. I also want to briefly address the ambiguity of these principally as a private residence language that was raised in the district court. It appears very briefly in the briefing and briefly at oral argument. It was not developed in the same way that the dwelling ambiguity arguments were developed, though. And then finally, I would like to speak to the concerns about policy nullification. So when we're talking about the practical effects of a two-structure dwelling, it's granting two points of reference for the competing coverages. And so not all of the buildings on the premises that have some use, some habitation use, so use for recreation or use occasionally for storage, not all of those are going to be granted coverage or brought into the fold of the dwelling coverage. And in particular, with the policy having two points of reference, we still have on Halverson's property a number of buildings that would qualify under the other structure's coverage. So even in Halverson's case, both of those coverages, Coverage A and Coverage B, would continue to apply.
judges: NGUYEN, HURWITZ, Ezra